## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) MANUEL LOPEZ, and | ) | |
| (2) AUGSTIN ARRIAGA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: CIV-15-1040-HE |
| | ) | |
| (1) THE QUIKRETE COMPANIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

---

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

---

October 17, 2016

Tony G. Puckett, OBA No.13336
Philip R. Bruce, OBA No. 30504
McAfee & Taft A Professional Corporation
Tenth Floor, Two Leadership Square
211 N. Robinson
Oklahoma City, Oklahoma 73102
Telephone:   (405) 235-9621
Facsimile:   (405) 235-0439
tony.puckett@mcafeetaft.com
philip.bruce@mcafeetaft.com

**ATTORNEYS FOR DEFENDANT**

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................... 1

STATEMENT OF UNDISPUTED MATERIAL FACTS ........................................... 2

    Quikrete's Hiring Practices and Driver Responsibilities and Duties. .............. 2

    Lopez's Employment with Quikrete. ................................................................. 4

    Lopez's Termination In the Probationary Period. .............................................. 5

    Arriaga's Employment with Quikrete. ............................................................... 7

    Arriaga's Termination In the Probationary Period. ........................................... 7

    Mark Collins's and Edwin De Leon's Employment and Driving Record with
        Quikrete. ...................................................................................................... 10

ARGUMENTS AND AUTHORITIES ..................................................................... 11

    PROPOSITION I: QUIKRETE DID NOT DISCRIMINATE AGAINST
    LOPEZ OR ARRIAGA BASED ON NATIONAL ORIGIN OR RACE ........ 12

    I.       LOPEZ CANNOT SHOW DISCRIMINATION. ................................... 13

          1.      Lopez Has No Proof of Discrimination for Quikrete Terminating
              Lopez. ........................................................................................... 13

          2.      Lopez Cannot Establish That His Termination Took Place
              Under Circumstances Giving Rise to an Inference of
              Discrimination or that Quikrete's Legitimate Non-
              Discriminatory Reasons for Terminating Him are Pretext. ...... 14

              i.     The Same Actor Inference Against Discrimination
                  Applies. ................................................................................. 15

              ii.    Hodges Had an Honest Belief That it was Lopez's Duty to
                  Check the Hub Oil, Lopez Did Not Check the Hub Oil,
                  and Lopez Failed to Take Responsibility for the Incident.
                  .............................................................................................. 16

              iii.   Mark Collins is Not a Valid Comparator Because He
                  Successfully Completed His Probationary Period Without
                  Any Preventable Incidents or Accidents. .......................... 18

              iv.   Hodges Never Used Derogatory Language About
                  Hispanics. ............................................................................. 19

              v.     The Alleged Termination of Two Other Hispanics and a
                  Co-worker's Comment Do Not Show Pretext. .................. 20

    II.     ARRIAGA CANNOT SHOW DISCRIMINATION. .............................. 21

**1.**     **Arriaga has No Proof of Discrimination.** ...................................... 21

**2.**     **Arriaga Cannot Show Circumstances That Raise an Inference of Discrimination Nor Can He Show Pretext.** .................................. 22

    **i.**     **The Same Actor Inference Against Pretext Applies to Arriaga.** .......................................................................... 22

    **ii.**     **Arriaga Admits Hodges Never Used Derogatory Language and Cannot Provide an Example of Hodges Laughing at Him.** ................................................................ 23

    **iii.**     **Hodges Had A Good Faith Belief That Arriaga Was A Careless Driver And Failed To Successfully Complete His Probationary Period.** ...................................................... 23

    **iv.**     **Hodges Alleged Threat That Arriaga Could be Terminated When He Got a Ticket is Exactly What a Written Warning is.** ........................................................ 25

    **v.**     **Arriaga's Alleged Flat Tire During a Delivery Has Nothing to Do with Alleged Discrimination.** ..................... 26

**PROPOSITION II: PLAINTIFFS' STATE LAW CLAIMS ALSO FAIL** .... 27

**PROPOSITION III: THE IMMIGRATION STATUS OF QUIKRETE EMPLOYEES HAS NOTHING TO DO WITH PLAINTIFFS' CASE.** ........ 29

**CONCLUSION** ........................................................................................... 30

**CERTIFICATE OF SERVICE** ................................................................. 32

# TABLE OF AUTHORITIES

## Cases

*Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136 (10th Cir. 2008) .......... 13

*Adler v. Wal-Mart Stores*, 144 F.3d 664 (10th Cir. 1998) ............................... 11

*Antonio v. Sygma Network, Inc.*, 458 F.3d 1177 (10th Cir. 2006) ..................... 15

*Aramburu v. Boeing Co.*, 112 F.3d 1398 (10th Cir. 1997)............................. 19

*Bowdish v. Fed. Express Corp.*, 699 F. Supp. 2d 1306 (W.D. Okla. 2010)..................... 28

*E.E.O.C. v. Goodwill Indus. of Sw. Oklahoma & N. Texas, Inc.,* No. CIV-11-1043-D, 2013 WL 5460819 (W.D. Okla. Sept. 30, 2013) .............................. 11

*E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790 (10th Cir. 2007 ............................. 12

*Espinoza v. Farah Mfg. Co.*, 414 U.S. 86 (1973)................................ 29

*Hamilton v. Oklahoma City Univ.*, 911 F. Supp. 2d 1199 (W.D. Okla. 2012) ................ 28

*Igwe v. Saint Anthony's Hosp.*, 804 F. Supp. 2d 1183 (W.D. Okla. 2011) ...................... 12

*Johnson v. Weld Cty., Colo.*, 594 F.3d 1202 (10th Cir. 2010) ........................ 16

*Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220 (10th Cir. 2000) ................. 13, 19

*Massey v. Blue Cross-Blue Shield of Illinois*, 226 F.3d 922 (7th Cir. 2000) ................... 19

*Matsushita Elec. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)........................ 11

*McClaflin v. Burd*, No. CIV-14-43-R, 2015 WL 10853848 (W.D. Okla. Mar. 31, 2015) 11

*McCombs v. Sylvan N. Goldman Ctr. Oklahoma Blood Inst., Inc.*, No. CIV-08-1114-C, 2009 WL 3152932 (W.D. Okla. Sept. 24, 2009) ............................. 12

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)............................. 12

*Medlock v. United Parcel Serv., Inc.*, 608 F.3d 1185 (10th Cir. 2010)........................... 28

*Melton v. Farmers Ins. Grp.*, 619 F. Supp. 2d 1131 (W.D. Okla. 2008) ....................... 17

*Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164 (10th Cir. 2006)........... 16, 26

*Patrick v. Williams Companies, Inc.*, 81 F.3d 173 (10th Cir. 1996) ................................ 21

*Rivera v. City & Cty. of Denver*, 365 F.3d 912 (10th Cir. 2004) ..................................... 27

*Rosales v. The Bd. of Regents of the Univ. of Oklahoma*, No. CIV-15-560-R, 2016 WL 5819795 (W.D. Okla. Oct. 5, 2016)................................................... 13

*Shelter Mut. Ins. Co. v. LittleJim*, 927 F.2d 1132 (10th Cir. 1991).................................. 11

*Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Services,* 165 F .3d 1321 (10th Cir.1999)................................................................ 12

*Sprague v. Thorn Americas, Inc.*, 129 F.3d 13553 (10th Cir. 1997)................................. 13

*Westbrook v. Good Neighbor Care Centers LLC*, No. CIV-12-0051-HE, 2013 WL 425077 (W.D. Okla. Feb. 4, 2013) ................................................................... 28

*Wood v. Sophie Davis Sch.*, No. 02 CIV.7781HB, 2003 WL 22966288 (S.D.N.Y. Dec. 15, 2003) ............................................................................................................. 15

## **Statutes**

25 O.S. § 1350(F) ............................................................................................................ 28

## **Rules**

Fed. R. Civ. P. 56 ...................................................................................................... 1, 11

LCvR 56.1 .......................................................................................................................... 1

## MOTION AND BRIEF IN SUPPORT

Pursuant to Fed.R.Civ.P. 56 and LCvR 56.1, Defendant, The Quikrete Companies, Inc. ("Quikrete") moves for summary judgment on all of Plaintiffs' claims because no genuine issue of material fact exists to preclude judgment as a matter of law. Specifically, there is no evidence of causation or pretext in James Hodges's ("Hodges") decision to discharge Plaintiffs Manual Lopez ("Lopez") and Agustine Arriaga ("Arriaga").

## INTRODUCTION

Quikrete did not discriminate against Plaintiffs because of their race or national origin . Plaintiffs were truck drivers for Quikrete and both were terminated while in their 90-day probationary periods after they both had preventable and careless incidents with their trucks.

Hodges, Plaintiffs' supervisor, hired Arriaga, a lawful permanent resident, seven weeks before he discharged Arriaga. He discharged Arriaga because Arriaga carelessly drove his truck partially into a ditch while he was pulling out of the gate at Quikrete's Oklahoma City plant. Arriaga had already received a written warning for a violation, and he was in his 90-day probationary period.

Hodges hired Lopez, a U.S. citizen, 17 days before he discharged Lopez. Hodges discharged Lopez after he was in a preventable incident in which the axle on Lopez's trailer sheared off due to Lopez failing to check the axle's hub oil. When Hodges questioned Lopez about whether he checked the hub oil, Lopez refused to take responsibility for his mistake, denied that checking the hub oil was his job duty, and claimed it was Hodges's responsibility to check the trailer's hub oil. Hodges concluded

Lopez refused to take responsibility for the incident. Lopez was within the 90-day probationary period.

Neither of Plaintiffs' terminations had anything to do with their national origin or race. More importantly, Plaintiffs have no proof of their claims. The sole comparator Plaintiffs point to, Mark Collins (another driver), was never in any preventable accident or incident, and he successfully completed his 90-day probationary period. Plaintiffs admit that Hodges never used any derogatory terms regarding Hispanics.

Plaintiffs cannot show that their terminations were based on their national origin or race, nor can they show Quikrete's legitimate non-discriminatory reasons for their terminations were pretext for discrimination. Summary judgment is proper.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### Quikrete's Hiring Practices and Driver Responsibilities and Duties.

1.     Quikrete's top priority for truck drivers is safety. Among employees, drivers pose the most threat to damage, injury, and liability to Quikrete and the public. Ex. 1, Hodges Decl. ¶ 6 (Oct. 17, 2016).

2.     Drivers are required to do a pre-trip safety inspection. *Id.* ¶¶ 6, 37; Ex. 2, Lopez Dep. 76:7-78:10, July 8, 2016; Ex. 3, Arriaga Dep. 142:16-19, June 30, 2016; Ex. 4, Quikrete Driver Manual, Inspection Policy.

3.     Among other safety inspections, drivers are required to check all gauges, oil levels, including the hub oil in the axles, and find and replace burned out lights. Ex. 1, Hodges Decl. ¶¶ 6, 37; Ex. 2, Lopez Decl. 74:13-76:2; Ex. 3, Arriaga Dep. 56:18-57:13;

Ex. 5, Lopez Record of Road Test, May 27, 2014 (indicating explanation of pre-trip inspection); Ex. 4, Driver's Manual Pre-trip Inspection Requirements Policy.

4.      As the Oklahoma City plant manager, Hodges expects Quikrete's drivers to take 100% ownership of the truck and trailer, determine if there are any problems with the truck and trailer, and make sure those problems are fixed. Ex. 1, Hodges Decl. ¶ 6.

5.      The trailers that Arriaga and Lopez drove had a sight glass hub oil gauge on each outside tire of the trailer. *Id.*; Ex. 3, Arriaga Dep. 57:1-13, 58:6-23; *see also* Ex. 6, Demonstrative Photos of Sight Glass.

6.      Hodges made the decision in 2014 to expand recruitment efforts for the Oklahoma City plant by advertising driver positions, and other positions, on a Spanish radio station to recruit and hire more employees who may not have otherwise heard about or applied for open positions. Ex. 1, Hodges Decl. ¶ 12.

7.      Hodges was Arriaga's and Lopez's supervisor. *Id.* at ¶ 5; Ex. 2, Lopez Dep. 34:8-9; Ex. 3, Arriaga Dep. 5:10-12.

8.      During Lopez's and Arriaga's new hire orientation, Hodges explained there is a probationary period for the first 90 days of employment, the purpose of which is to determine if new hires are qualified. Ex. 1, Hodges Decl. ¶ 22.

9.      Hodges also explained that new employees receive a monetary raise after 90 days. *Id.*; Ex. 3, Arriaga Dep. 27:15-28:9; 32:12-16.

10.     Hodges provided Arriaga and Lopez with an employee handbook and other documents. Arriaga and Lopez signed acknowledgements for the handbook and several

other policies. Ex. 1, Hodges Decl. ¶ 23; Ex. 7, Lopez Handbook Acknowledgment, May 22, 2014; Ex. 8, Arriaga Handbook Acknowledgement, May 5, 2014.

11.     Hodges believed Arriaga and Lopez could understand English well enough to speak with him, drive a truck and read road signs or directions, and were capable of understanding the employee handbook and other documents. Ex. 1, Hodges Decl. ¶ 23.

12.     The employee handbook included a probationary policy that applies to all employees.  It states, in part, "During the probationary period—the first 90 days of employment—and employee has the chance to demonstrate adequate abilities and performance standards in order to be retained his position…Probationary employees can be dismissed without prior notice or obligation." Ex. 9, Quikrete Probationary Policy.

**Lopez's Employment with Quikrete.**

13.     Hodges interviewed Lopez in May 2014 and hired Lopez on May 27, 2014 Ex. 1, Hodges Decl. ¶ 16; Ex. 2, Lopez Dep. 106:15-16.

14.     Hodges knew that Lopez was Hispanic at the time he hired him. Ex. 1, Hodges Decl. ¶ 17; Ex. 2, Lopez Dep. 34:10-12.

15.     Hodges terminated Lopez on June 13, 2014; 17 days after Hodges hired Lopez. Ex. 1, Hodges Decl. ¶ 41; Ex. 2, Lopez Dep. 32:18-24; Ex. 10, Lopez Employee Termination Checklist.

16.     Hodges also knew that Lopez was a U.S. citizen, as Lopez provided a U.S. passport for I-9 form purposes, and Hodges believed Lopez's passport to be genuine. Ex. 1, Hodges Decl. ¶ 18; Ex. 2, Lopez Dep. 117:16-118:12; Ex. 11, Lopez Form I-9 and Identification Documents.

17.     Hodges further believed that, notwithstanding any training, checking the sight glass for the hub oil level is what any competent CDL driver should do and is routinely performed by CDL drivers. *Id.* at ¶ 37; Ex. 2, Lopez Dep. 81:19-83:24, 114:6-115:1; Ex. 3, Arriaga Dep. 57:1-13, 58:6-23; Ex. 12, Model CDL Manual.

**Lopez's Termination In the Probationary Period.**

18.     Lopez called Hodges early on June 13, 2014 while he was on a delivery to Ada, Oklahoma. Ex. 1, Hodges Decl. ¶ 33; Ex. 2, Lopez Dep. 57:3-58:21

19.     Hodges recalled that Lopez told him that Lopez had a tire issue and Hodges sent a tire mechanic out to Lopez to help. Ex. 1, Hodges Decl. ¶ 33; Ex. 2, Lopez Dep. 65:7-11.

20.     The tire mechanic called Hodges and told Hodges that it was not a tire issue and the axle had sheared off because there was no hub oil; the tire mechanic could not do anything to help and left. Ex. 1, Hodges Decl. ¶ 34; Ex; 2, Lopez Dep. 66:6-10; 67:7-11.

21.     Hodges called another mechanic from a towing company to temporarily fix the axle. This mechanic brought a truck-mounted forklift and helped unload the trailer so the delivery could be completed. He also lifted the trailer up and chained the axle to the trailer as a temporary fix so Lopez could drive the trailer back to the Oklahoma City plant. The towing company also loaded Lopez's delivery onto the truck of a different driver that was sent out there to complete the delivery. Ex. 1, Hodges Decl. ¶ 35; Ex. 2, Lopez Dep. 67:4-69:7.

22.     The second mechanic called Hodges and told him the axle had sheared off because there was no hub oil lubricating the axle bearings. Ex. 1, Hodges Decl. ¶ 36.

23.     When Lopez returned to the Oklahoma City plant, Hodges told Lopez to go to his office. Hodges then inspected Lopez's trailer. Hodges saw that the axle was sheared off and had burn marks. Hodges believed this confirmed what the two mechanics had told him. Ex. 1, Hodges Decl. ¶ 38.

24.     Hodges then went to his office to speak with Lopez. He asked Lopez if he had checked the sight glass on the hub oil. Lopez told Hodges that he had not. Hodges told Lopez that was a stupid mistake. Lopez then told Hodges that it was not his job to check the hub oil. Ex. 1, Hodges Decl. ¶ 39; Ex. 2, Lopez Dep. 72:2-73:12.

25.     Lopez did not check the sight glass for hub oil on the delivery to Ada. He only checked it once during his employment with Quikrete. Ex. 1, Hodges Decl. ¶ 39; Ex. 2, Lopez Dep. 74:13-22, 79:7-80:3, 114:22-115:1.

26.     Hodges believed that Lopez was at fault for the incident because he had not checked the hub oil and this cause of the accident was verified by two mechanics and Hodge's own inspection of the trailer. Hodges further believed that Lopez was not taking responsibility for his mistake and was blaming Hodges for the incident. Because Lopez was still in his probationary period, Hodges terminated him based on his belief that he refused to take responsibility for his actions in the incident. Ex. 1, Hodges Decl. ¶ 40; Ex. 2, Lopez Dep. 122:19-123:2.

27.     Lopez does not know whether the incident was due to a lack of oil in the bearings and did not list any reasons for the incident in his daily log. Ex. 2, Lopez Dep. 90:15-19; 96:10-97:21; Ex. 13, Lopez Daily Driver's Log, June 13, 2014.

28.     Lopez never heard Hodges use any derogatory terms about Hispanics and does not know of any other employees that heard Hodges used derogatory terms about Hispanics. Ex. 1, Hodges Decl. ¶ 57; Ex. 2, Lopez Dep. 120:18-25; 121:7-16, 125:9-21, 126:5-13.

**Arriaga's Employment with Quikrete.**

29.     Hodges interviewed Arriaga in early May 2014 and hired him on May 5, 2016. Ex. 1, Hodges Decl. ¶ 19; Ex. 14, Arriaga New Hire Form.

30.     Hodges knew Arriaga was Hispanic when he hired him. Ex. 1, Hodges Decl. ¶ 20; Ex. 3, Arriaga Dep. 35:16-22.

31.     Hodges terminated Arriaga just over seven weeks later on June 24, 2014. Ex. 1, Hodges Decl. ¶ 51; Ex. 3, Arriaga Dep. 26:1-4; Ex. 15, Arriaga Employee Termination Checklist

32.     Hodges knew that Arriaga was a lawful permanent resident. Arriaga filled out required I-9 forms and provided Hodges with a copy of his Oklahoma's driver's license and social security card. These documents appeared to be genuine to Hodges, and Hodges believed Arriaga to be authorized to work in the United States. Ex. 1, Hodges Decl. ¶ 21; Ex. 3, Arriaga Dep. 164:9-11; Ex. 16, Arriaga Form I-9 and Identification Documents.

**Arriaga's Termination In the Probationary Period.**

33.     On May 23, 2014 Arriaga received a violation from the Missouri Highway Patrol for an inoperative turn signal. Ex. 1, Hodges Decl. ¶ 46, Ex. 3, Arriaga Dep. 71:1-73:3; Ex. 17, Traffic Violation, May 23, 2014.

7

34.     On May 27, 2014, Hodges gave Arriaga a written warning for this violation and warned him he could be terminated if he had another occurrence. Ex. 1, Hodges Decl. ¶ 46; Ex. 3, Arriaga Dep. 70:15-23, 71:1-74:8; Ex. 18, Arriaga Written Warning, May 28, 2014.

35.     On June 24, 2016, Arriaga drove his truck off the gravel road while pulling out of the gate at the Quikrete plant. Ex. 1, Hodges Decl. ¶ 47; Ex. 3, Arriaga Dep. 83:12-22, Ex. 19, Arriaga Towing Invoice; Ex. 20, Photo of Truck in Ditch.

36.     Arriaga was looking down and not looking at the road and got distracted when he drove off the road. Ex. 1, Hodges Decl. ¶ 48; Ex. 3, Arriaga Dep. 84:25-85:5, 100:8-14, 102:7-19.

37.     Arriaga is the only Quikrete employee in Oklahoma City who has driven off the road into the ditch on the gravel road. Ex. 1, Hodges Decl. ¶ 49.

38.     While focused on trying to get the truck out of the ditch, Hodges terminated Arriaga. Hodges believed Arriaga driving off the road was unsafe driving and the result of Arriaga not paying attention, and Hodges believed Arriaga was on his cell phone at the time he drove off the road. Arriaga was still on his probationary period. *Id.* at ¶¶48-50.

39.     Arriaga did not report any problems with his brakes on his pre-trip inspection form on June 24, 2014. Ex. 3, Arriaga Dep. 95:13-96:20; Ex. 21, Arriaga Pre-trip Vehicle Inspection Report, June 24, 2014.

40.     If there were problems with Arriaga's air brakes, the brakes would not have disengaged and Arriaga could not have operated the truck. Ex. 1, Hodges Decl. ¶ 54; Ex. 3, Arriaga Dep. 61:17-62:1, 67:1-13, 68:16-22.

41.     A different driver completed Arriaga's delivery on June 25, 2014 with the same tractor and trailer and did not report any problems with the brakes. Ex. 1, Hodges Decl. ¶¶ 52-53.

42.     Arriaga told Hodges that Arriaga thought there were problems with the air bags on the truck. Air bags are on the rear of the truck and are the suspension system for the trailer the truck is pulling. Ex. 1, Hodges Decl. ¶ 55; Ex. 3, Arriaga Dep. 59:8-23.

43.      Hodges told Arriaga to take the truck to get fixed if he was having problems. Ex. 1, Hodges Decl. ¶ 56; Ex. 2, Lopez Dep. 50:18-25, 62:9-14, 62:22-64:13; Ex. 3, Arriaga Dep. 53:21-54:15; 123:4-12, 142:3-12.

44.     Arriaga took the truck to Penske at least on one occasion and they could not locate any problems with the air bags. Ex. 1, Hodges Decl. ¶ 55; Ex. 3, Arriaga Dep. 63:19-25; Ex. 22, ECF No. 48-4, Brent at Penske Audio Recording Transcript.

45.     Hodges always told Arriaga to take the truck to Penske if Arriaga believed there was a problem. If there was a problem with a truck that needed mechanical work, Penske would provide a temporary truck. Ex. 1, Hodges Decl. ¶¶ 55-56; Ex. 3, Arriaga Dep. 123:4-12

46.     Arriaga does not know of any other drivers that got violations in their probationary period, does not know if any non-Hispanic drivers had any incidents or accidents, and does not now of any other drivers that drove into a ditch like Arriaga. Ex. 3, Arriaga Dep. 80:20-25, 81:5-10, 113:10-24, 157:11-16.

47.     Arriaga never heard Hodges say any derogatory terms about Mexicans and he could not provided any examples of Hodges making fun of Arriaga. Ex. 3, Arriaga Dep. 116:15-18, 115:12-116:6, 158:23-159:23.

## Mark Collins's and Edwin De Leon's Employment and Driving Record with Quikrete.

48.     Edwin De Leon is a former Hispanic Quikrete driver. Hodges terminated him during his probationary period. Another driver saw De Leon drive out of the yard with a flat tire that resulted in a blow out. Hodges terminated De Leon after he learned of that because he had already given De Leon two warnings for a speeding incident and complaint of an unsafe lane change. De Leon has not made a complaint of discrimination regarding his termination. Ex. 1, Hodges Decl. ¶ 45.

49.     Collins is a white truck driver from the United States who is supervised by Hodges. Ex. 1, Hodges Decl. ¶ 28.

50.     Hodges gave Collins a warning for an overweight violation during his probationary period. Ex. 1, Hodges Decl. ¶; Ex. 23, Collins's End of Probationary Period Performance Appraisal, July 25, 2013.

51.     Collins has never been late to work or on a delivery and has an exemplary attendance record. Ex. 1, Hodges Decl. ¶ 29; Ex. 23, Collins's End of Probationary Period Performance Appraisal ("Always gets his loads taken care of…stays within hours of service and gets all loads handled.").

52.     Collins has never been in a preventable accident or incident and successfully completed his probationary period. Ex. 1, Hodges Decl. ¶ 29; ; Ex. 23,

Collins's End of Probationary Period Performance Appraisal ("Mark has had no accidents, drives safely…" and overall rating of "Very Good" after probationary period).

53.     After Collins's probationary period, he found a crack in the steel frame of his trailer due to metal fatigue. The crack is not something that could be prevented or maintained. Lopez admits this was a different situation than Lopez's incident. Ex. 1, Hodges Decl. ¶ 31; Ex. 2, Lopez Dep. 49:3-7.

## ARGUMENTS AND AUTHORITIES

"A motion for summary judgment shall be granted 'if the movant shows that there is no *genuine* issue as to any *material* fact and the moving party is entitled to judgment as a matter of law.'" *Shelter Mut. Ins. Co. v. LittleJim,* 927 F.2d 1132, 1134 (10th Cir. 1991) (quoting FED. R. CIV. P. 56(a)) (emphasis added).  Once Quikrete meets its burden, Plaintiffs must then set forth specific facts supported by admissible evidence from which a rational jury could find in his favor. *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998).  Plaintiffs must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Rather, Plaintiffs must go "beyond the pleadings" and present affirmative evidence "that [their] version of relevant events is not fanciful." *McClaflin v. Burd*, No. CIV-14-43-R, 2015 WL 10853848, at *1 (W.D. Okla. Mar. 31, 2015), *aff'd*, 622 F. App'x 769 (10th Cir. 2015).  A "mere scintilla of evidence" is insufficient to carry this burden. *E.E.O.C. v. Goodwill Indus. of Sw. Oklahoma & N. Texas, Inc.,* No. CIV-11-1043-D, 2013 WL 5460819, at *1 (W.D. Okla. Sept. 30, 2013).  Speculation, beliefs, assumptions, and surmise cannot overcome summary judgment. *McCombs v. Sylvan N.*

11

*Goldman Ctr. Oklahoma Blood Inst., Inc.*, No. CIV-08-1114-C, 2009 WL 3152932, at *2 (W.D. Okla. Sept. 24, 2009).

## PROPOSITION I: QUIKRETE DID NOT DISCRIMINATE AGAINST LOPEZ OR ARRIAGA BASED ON NATIONAL ORIGIN OR RACE

Plaintiffs allege that Quikrete discriminated against them based on their national origin and race in violation of Title VII of the Civil Rights Act of 1964 and the Oklahoma Anti-Discrimination Act ("OADA").[1] Courts apply the familiar *McDonnell Douglas* burden shifting framework for discrimination claims when there is no direct evidence of discrimination, like here. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Plaintiffs must first establish a *prima facie* case. Plaintiffs must show: (1) they belong to a protected class; (2) they suffered an adverse employment action; and (3) their terminations occurred under circumstances giving rise to an inference of discrimination. *See E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007).[2]

---

[1] Plaintiffs did not file EEOC charges alleging race discrimination. (*See* ECF No. 59-3, 48-5). Thus, they did not exhaust their administrative remedies on the race discrimination claims and this Court is without jurisdiction to hear the race claims. *Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Services,* 165 F .3d 1321, 1326 (10th Cir.1999). Nonetheless, the *McDonnell Douglas* analysis is the same for both race and national origin discrimination claims. Also, the same defenses and analysis applies for the OADA and Title VII. Thus, even assuming that Plaintiffs' being Hispanic (but not filing a charge for race discrimination) qualifies as a race discrimination claim; it fails for the same reasons as Plaintiffs' national origin claim. As short hand, Quikrete refers to the Plaintiffs' potential race and national origins (El Salvador for Lopez and Mexico for Arriaga) as Hispanic.

[2] As this Court has noted, the Tenth Circuit has used different and sometimes inconsistent elements for a prima facie case. *Igwe v. Saint Anthony's Hosp.*, 804 F. Supp. 2d 1183, 1190 n.19 (W.D. Okla. 2011), *aff'd*, 464 F. App'x 685 (10th Cir. 2012). Sometimes the stated elements include that the job was not eliminated after the discharge. *Id.* The Tenth

If Plaintiffs can establish a prima facie case, then Quikrete has the burden of production to show a legitimate, non-discriminatory reason for the Plaintiffs' terminations. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000). This burden is exceedingly light. *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1363 (10th Cir. 1997).

Finally, once Quikrete produces a legitimate, non-discriminatory reason, the burden of proof shifts to Plaintiffs to show that the legitimate, non-discriminatory reasons are pretext. *Kendrick*, 220 F.3d at 1226. Here, Plaintiffs have no proof for their *prima facie* case and they cannot show that Quikrete's legitimate, non-discriminatory reasons are pretext for discrimination. Summary judgment is proper.

## I.   LOPEZ CANNOT SHOW DISCRIMINATION.

### 1.   Lopez Has No Proof of Discrimination for Quikrete Terminating Lopez.

The Court should grant summary judgment on Lopez's discrimination claims because he cannot show a genuine issue of material fact either under his prima facie case or as pretext for Quikrete's termination decision. He has a complete lack of evidence.

---

Circuit, however, has stated that: "The critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred 'under circumstances which give rise to an inference of unlawful discrimination." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1151 (10th Cir. 2008) (internal citations omitted). At times, courts have conflated this inference analysis with the pretext analysis. *Id.* ("[T]here is no proscription in an appropriate case against using pretext evidence to support a prima facie case if it indeed gives rise to an inference of actionable discriminatory intent." (internal citations omitted)). Other judges in this district have also recently granted summary judgment on prima facie grounds. *See Rosales v. The Bd. of Regents of the Univ. of Oklahoma*, No. CIV-15-560-R, 2016 WL 5819795, at *2 (W.D. Okla. Oct. 5, 2016). For the sake of completeness, Quikrete addresses the failure of Plaintiffs' claims under both the prima facie case and pretext.

Lopez admits Hodges terminated him after Lopez had an incident with his truck on a delivery to Ada, Oklahoma.[3] What Hodges believed happened in this incident was the axle sheared off from the trailer's wheel because there was not enough hub oil. Undisputed Material Fact ("UMF") 26.[4] Among other reasons, Hodges believed this because two mechanics told him that was the problem, and he inspected the trailer and found markings consistent with what the mechanics told him. *Id.* Lopez even admitted to Hodges that he did not check the hub oil on the trip to Ada. UMF 25-26. Lopez also admitted that he did not take responsibility for the incident. *Id.* After Hodges terminated Lopez, Hodges confirmed with a third mechanic who repaired the trailer that the lack of hub oil caused the damage. Ex. 1, Hodges Decl. ¶¶ 42-43. Thus, Hodges terminated him for the legitimate, non-discriminatory reasons that Hodges believed Lopez did not check the hub oil, refused to take responsibility for his mistake, and was in the 90-day probationary period. UMF 26.

2. **Lopez Cannot Establish That His Termination Took Place Under Circumstances Giving Rise to an Inference of Discrimination or that Quikrete's Legitimate Non-Discriminatory Reasons for Terminating Him are Pretext.**

There is an utter lack of evidence that Lopez's termination gives rise to an inference of discrimination or that Quikrete's reasons for terminating him are pretext. Overall, Lopez claims Hodges discriminated against him for several reasons: (1) he

---

[3] Lopez describes the event with his truck as an "incident." Ex. 3, Lopez Dep. 52:23-53:4. For consistency and because the description of the event is not material, Quikrete uses the term incident to describe the events with both Lopez's and Arriaga' trucks.

[4] *See also* Ex. 1, Hodges Decl. ¶ 7 for an explanation of the purpose of hub oil and consequences of not having hub oil.

apparently does not believe it was his duty to check the hub oil in his trailer or that the incident was caused by his failure to do so; (2) he believes he was not treated the same as Collins; (3) Hodges allegedly insulted him in the meeting discussing the incident with Lopez's trailer; and (4) three Hispanics were terminated in a three-month period and he was told by an unnamed, non-managerial loader that Hispanics do not last long at Quikrete. Ex. 2, Lopez Dep. 109:1-18, 110:13-18. These claims all fail.

### i.      The Same Actor Inference Against Discrimination Applies.

At the outset, there is a strong inference *against* pretext here. Lopez worked at Quikrete for 17 days. UMF 15. He admits that Hodges is the same person who hired him and terminated him. UMF 13, 15.  It is undisputed that Hodges knew Lopez was Hispanic at the time Hodges hired him. UMF 14. Quikrete is therefore entitled to the "same actor" inference. The Tenth Circuit has stated, that "where 'the employee was hired and fired by the same person within a relatively short time span,' there is 'a strong inference that the employer's stated reason for acting against the employee is not pretextual.'" *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1183 (10th Cir. 2006) (citing cases where the inference applied after a hiring and firing period of eight days, three months, six months, 11 months, one year, and four years.); *see also Wood v. Sophie Davis Sch.*, No. 02 CIV.7781HB, 2003 WL 22966288, at *4 n.14 (S.D.N.Y. Dec. 15, 2003) (explaining that inference is stronger when there is closer temporal proximity between hiring and firing). Lopez has no evidence to overcome this strong inference.

Furthermore, any claim that Hodges had animosity against Lopez (and Arriaga) because of being Hispanic is dramatically weakened by the fact that Hodges made the

decision to advertise truck driver positions on Spanish radio to recruit employees that would likely be Hispanic. UMF 6.

> **ii.     Hodges Had an Honest Belief That it was Lopez's Duty to Check the Hub Oil, Lopez Did Not Check the Hub Oil, and Lopez Failed to Take Responsibility for the Incident.**

Lopez's claim that it was not his duty to check the hub oil and the incident was not caused by the lack of hub oil fails legally and factually.

First, it is not the Court's role "to ask whether the employer's decision was 'wise, fair or correct, but whether [Hodges] honestly believed [the legitimate, nondiscriminatory] reasons [He gave for the termination] and acted in good faith on those beliefs.'" *Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010) (internal citations omitted).

Even if Lopez could show that the incident was not, in fact, caused by a lack of hub oil (which he cannot), this is not enough to show pretext. *See id.* ("To support an inference of pretext, to suggest that something more nefarious might be at play, a plaintiff must produce evidence that the employer did more than get it wrong. He or she must come forward with evidence that the employer didn't really believe its proffered reasons for action and thus may have been pursuing a hidden discriminatory agenda."). Nor is it appropriate to evaluate whether Lopez subjectively believed he was doing his job duties or adequately performing his job. Rather, it is *Hodge's* perception of Lopez's duties and performance that matter. *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1179 (10th Cir. 2006) ("[i]t is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of [her] own relative performance.")

16

(internal citations omitted); *see also Melton v. Farmers Ins. Grp.*, 619 F. Supp. 2d 1131, 1140 (W.D. Okla. 2008).

Regardless, Lopez has no factual support that the incident was not caused by a lack of hub oil. Indeed, he admits that he does not know whether the incident was caused for a lack of oil in the bearing. UMF 27. Nor did he list a reason for the trailer problem in his daily log. *Id.* More still, he cannot factually support that it was not his job duty to check the hub oil sight glass. He admits that he previously checked it on a prior delivery trip to Woodward, Oklahoma because it is "routine." UMF 25. Lopez further admits that the commercial driver's license manual states it is the driver's responsibility to check the hub oil in the sight glass. UMF 17. Arriaga also testified that it is part of the pre-trip inspection to check the hub oil via the sight glass. *Id.*

Lopez has no proof that Hodges did not honestly believe that it was Lopez's duty to check the hub oil, that Lopez did not check the hub oil, and that the incident was caused by Lopez's failure to check the hub oil. Hodges undeniably had a good faith basis for numerous reasons. First, Lopez admits he did not check the hub oil on the delivery to Ada. UMF 24-25. Second, Hodges believed the incident was caused by a lack of oil because two mechanics told him that was the reason. UMF 20, 22, 26. Third, Hodges inspected the axle on the trailer before terminating Lopez and found burn marks consistent with what the mechanics told him. UMF 23. Fourth, Hodges believes that Collins had trained Lopez to check the sight glass because this is a normal part of the two-day road test and training. UMF 26; Ex. 1, Hodges Decl. ¶¶ 36, 37; Ex. 5 Lopez Record of Road Test; Ex. 24, Lopez Driver Trainer Checklist. Fifth, notwithstanding the

17

actual training Lopez received, Hodges believes this is a routine safety check that ever CDL driver should complete. UMF 3, 17. Finally, a third mechanic who repaired the trailer confirmed Hodges belief that the incident was caused by a lack of hub oil. Ex. 1, Hodges Decl. ¶¶ 41-42.

The final straw for Hodges was that Lopez refused to take responsibility for his mistake. Hodges made an appropriate business decision. Indeed, Lopez failing to check the hub oil caused over $4,000 in towing and repair costs to Quikrete. Ex. 1, Hodges Decl. ¶ 44; Ex. 25, Lopez Towing Charge; Ex. 26, City Trailers Repair Invoice.

### iii.   Mark Collins is Not a Valid Comparator Because He Successfully Completed His Probationary Period Without Any Preventable Incidents or Accidents.

Lopez claims he was discriminated because he was not treated the same as Collins. The incidents with Collins's trailer and Lopez's trailer were very different. The issue with Collins's trailer was that there was a crack in the trailer due to metal fatigue. UMF 53. Lopez claims Collins broke the trailer but he has no facts about how Collins allegedly broke the trailer. *Id.;* Ex. 2, Lopez Dep. 111:11-112:17. Nor did Lopez ever see the crack. *Id.* Actually, it was Collins that noticed the crack and had it fixed *before* there was an incident, unlike Lopez's incident where the axle sheared off. UMF 53.

Even if the problem with Collins's trailer was anything like the incident with Lopez's, it did not happened during Collins's probationary period. UMF 52.  In fact, Collins, successfully completed his probationary period without any preventable incidents or accidents during his probationary period. Thus, the issue with Collins is different, he is not an adequate comparator, and it does not show pretext. *See Kendrick v.*

*Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1233 (10th Cir. 2000) ("A company must be allowed to exercise its judgment in determining how severely it will discipline an employee for different types of conduct. 'Our role is to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments.'") (internal citations omitted); *see also Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997) ("A court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated.").

### iv.    Hodges Never Used Derogatory Language About Hispanics.

Lopez claims Hodges discriminated against him because Hodges allegedly insulted him during the termination meeting. Ex. 2, Lopez Dep. 109:1-18, 110:15-18, 113:10-114:1. This alleged insult has nothing to do with race or national origin. Lopez claims Hodges called him stupid or said what he did (not checking the hub oil) was stupid.[5] This is not evidence of discrimination. *See Massey v. Blue Cross-Blue Shield of Illinois*, 226 F.3d 922, 926 (7th Cir. 2000) ("[O]ne rude comment from the supervisor that a person is 'stupid,' while certainly not to be commended, does not amount to evidence of racial discrimination…."). More telling, Lopez admits that Hodges never used derogatory language about Hispanics, El Salvadorians, or Mexicans. UMF 28. Nor

---

[5] Hodges recalls saying Lopez made a stupid mistake (i.e. not checking the hub oil). Lopez is not clear on whether he claims Hodges called Lopez stupid or that what he did was stupid. *See* Ex. 2, Lopez Dep. 72:12-15. Whether Hodges called Lopez stupid or said it was a stupid mistake is not material. Neither has to do with race or national origin.

did any other employees tell Lopez that Hodges made derogatory statements about Hispanics, El Salvadorians, or Mexicans. *Id.*

### v. The Alleged Termination of Two Other Hispanics and a Co-worker's Comment Do Not Show Pretext.

Finally, Lopez claims that he believes Hodges discriminated against him because Quikrete terminated two other Hispanics in a three month period. Ex. 2, Lopez Dep. 109:5-110:3. These employees were Edwin De Leon and Arriaga.[6] *Id.* at 115:2-9. Similarly, Lopez claims discrimination because an unnamed loader allegedly told him that Hispanics do not last long at Quikrete. *Id.* at 115:23-116:25.

Even assuming the terminations of other Hispanics (as opposed to those outside Lopez's protected class) could show pretext (which, it cannot), the reasons for these other terminations is clear. As discussed below, Arriaga was terminated for driving his truck off the road after having a previous written warning—all during his probationary period.

Lopez claimed that De Leon was terminated for a late delivery due to a flat tire. *Id.* at 118:25-119:9. Lopez never claimed De Leon was terminated for a discriminatory reason. He also has no personal knowledge of the circumstances of the alleged termination and never discussed it with Hodges. *Id.* at 43:14-23 Finally, De Leon has never accused Quikrete of any discrimination is his termination (no Oklahoma City driver has). UMF 48. Regardless, Hodges also terminated De Leon during his probationary

---

[6] Lopez's focus on De Leon and Arriaga ignores that the first truck driver Hodges hired after Plaintiffs' terminations was Oscar Mendez, who is Hispanic. Ex. 1, Hodges Decl. ¶ 59. It also ignores that Raul Tevez, who is Lopez's friend and told him about Quikrete needing truck driver is Hispanic and has worked for Quikrete for over two years. *Id.* at ¶ 32.

period because he had two warning before leaving the yard with a flat tire (which led to a blowout) and not doing a pre-trip inspection. *Id.*

The unknown loader's comments do not show discrimination. The loader, a non-supervisory co-worker, allegedly said Hispanics do not last long because "they" were very demanding and "they" will fire you for any reason. Ex. 2, Lopez Dep. 109:14-18. On its face, a demanding job with strict rules has nothing to do with discrimination. Further, this is a hearsay statement for an unknown individual who is (or was) admittedly not a manager. *Id.* 116:21-25. The vague reference about what "they" allegedly did is not connected to Hodges or similarly situated truck drivers in any manner. The Court should ignore this hearsay statement that is, at best, an isolated comment by a co-worker. It proves nothing. *See Patrick v. Williams Companies, Inc.*, 81 F.3d 173 (10th Cir. 1996) ("Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions.").

In sum, Lopez has no evidence of discrimination. His reasons for alleging Hodges discriminated against him are factually and legally faulty. He cannot show any circumstance showing an inference of discrimination or pretext, particularly in light of the strong inference against pretext for Hodges being the same actor.

## II.   ARRIAGA CANNOT SHOW DISCRIMINATION.

### 1.   Arriaga has No Proof of Discrimination.

Hodges terminated Arriaga because Arriaga drove his truck partially into a ditch right outside the gate of the Oklahoma City plant. UMF 35-38. This was only a month after Arriaga received a written warning from Hodges. UMF 33-34. Hodges believed that

Arriaga driving in to the ditch was plainly careless driving, and Arriaga was still in his probationary period. UMF 38. Thus, Hodges terminated Arriaga while Hodges was focused on making sure the truck and trailer did not tip over in the ditch. UMF 38. Arriaga has no evidence to show that these legitimate non-discriminatory reasons for his termination involved circumstances raising an inference of discrimination or that these reasons are pretext.

**2. Arriaga Cannot Show Circumstances That Raise an Inference of Discrimination Nor Can He Show Pretext.**

Like Lopez, Arriaga's claim of discrimination is weak. Arriaga claims that Hodges discriminated against him for four reasons: (1) an unnamed forklift drover told Arriaga that Hodges laughed at Arriaga for the way he speaks English; (2) Hodges did not give Arriaga a chance to explain that allegedly it was the brakes on his truck not working that caused him to drive into a ditch; (3) Hodges threatened Arriaga with termination in his written warning after Arriaga got a citation for having his turn signal burnt out; and (4) Arriaga felt pressured by Hodges to drive 20 miles before getting a flat tire fixed. Ex. 3, Arriaga Dep. 120:6-23. None of these reasons can avoid summary judgment.

**i. The Same Actor Inference Against Pretext Applies to Arriaga.**

Hodges hired Arriaga and knew that he was Hispanic. Hodges terminated Arriaga approximately seven weeks later. UMF 29-32. The same "strong inference" against pretext that applies to Lopez also thus applies to Arriaga. Moreover, Arriaga stated he "cannot answer that" when asked if it makes any sense the Hodges would hire him

knowing he was from Mexico and then terminate him a few weeks later. Ex. 3, Arriaga

Dep. 118:5-10.

### ii.     Arriaga Admits Hodges Never Used Derogatory Language and Cannot Provide an Example of Hodges Laughing at Him.

Arriaga claims that Hodges laughed at him for the way Arriaga speaks English. *Id.*

115:12-25. Yet, this is entirely based on what an unnamed and unknown forklift driver

allegedly told Arriaga. *Id.* Indeed, Arriaga admits that he never heard Hodges laugh at

him. *Id.*; UMF 47. Nor could Arriaga provide one time that Hodges made fun of him. *Id.*

Still more, Arriaga admits he never heard Hodges say any derogatory terms about

Mexicans (like Arriaga). *Id.* Arriaga's allegations of what an unknown individual told

him and Arriaga's own admissions do not show any circumstances of discrimination or

pretext.

### iii.    Hodges Had A Good Faith Belief That Arriaga Was A Careless Driver And Failed To Successfully Complete His Probationary Period.

There is no evidence that Hodges did not believe Arriaga was a careless driver. Again,

the termination decision is viewed from the point of Hodges, the decision-maker, and it is

immaterial whether Hodges proved to be incorrect, so long as he had a good faith belief

that Arriaga was careless. UMF 38.

Here, Hodges had already given Arriaga a written warning a month before he drove

into the ditch. UMF 34. Arriaga is also the only Quikrete employee who has ever driven

into the ditch outside the gate. UMF 37. Hodges also believed that to drive into the ditch,

a driver would have to be not paying attention or driving too fast. UMF 38. This is

because drivers have to accelerate into the turn to get over the incline onto the gravel road and should not have to brake. *Id.*; Ex. 1, Hodges Decl. ¶ 40. Simply put, Hodges believes Arriaga driving his truck in the ditch was plainly careless. UMF 38.

Hodges also believed that Arriaga told him he was not paying attention and that Arriaga was on his cell phone. UMF 38. While Hodges cannot specifically recall now, he believes either Arriaga or another driver told him that Arriaga was using his cell phone to put the address for his delivery into the GPS for directions. *Id.* Even Arriaga admits that he "got distracted" and was looking down at the time he ran off the road. UMF 36.

Arriaga's claims that he was not allowed to explain the accident or it was caused by his brakes are unavailing. Even if Hodges did not ask him what happened, there is good reason. First, the probationary period plainly states employees may be terminated without notice. UMF 12. Second, Hodges was focused on making sure the trailer did not tip over and getting the truck out of the ditch; Hodges did not have time for Arriaga to offer excuses, particularly after his previous written warning and being in his probationary period. UMF 38.

The weak excuse by Arriaga from his deposition that the brakes were not working is refuted by Arriaga's own contradictory testimony and the evidence. First, Arriaga admitted that if there is not enough air for the brakes, the truck will not operate and the brakes will not disengage. UMF 40. In other words, the truck will not move. Arriaga admitted that if the brakes start losing air then the brakes will activate and lock up. *Id.* Yet, Arriaga then said he was losing air and his brakes were *not* engaging. Ex. 3, Arriaga Dep. 85:1-5. Arriaga admitted he did not hear any alarm indicating a loss of air pressure

in the brakes. *Id.* 98:8-12, 98:20-24, 100:15-18. The same truck and trailer were also used by a different driver to complete the delivery without any problems the day after Arriaga was terminated. UMF 41.

Arriaga also never complained of a problem with the air brakes to Hodges. Ex. 1, Hodges Decl. ¶ 54. Despite Arriaga admitting he checked the brakes, he did not indicate on his pre-trip inspection form or otherwise that there was a problem with the brakes. UMF 39.

What Arriaga did report is that the air bags had a leak. UMF 42. These air bags, however, are for the suspension on the trailer, and not the brakes. *Id.* Nonetheless, Arriaga admits that every time he told Hodges he had a problem with the air bags, Hodges told him to go get it fixed. UMF 43. On one occasion when Arriaga did take his truck and trailer to Penske to be inspected, they could not find any indication of an air leak. UMF 44. There is nothing in the record to show that Arriaga's incident was caused by anything other than what Hodge's believed: Arriaga's carelessness during his probationary period.

> ### iv.    Hodges Alleged Threat That Arriaga Could be Terminated When He Got a Ticket is Exactly What a Written Warning is.

Arriaga's claim that Hodges threatened him after Arriaga got a citation for inoperable turn light makes no sense. It is not connected to discrimination in any way. A written *warning* is, by definition, supposed to be a notice that an employee will be terminated if the employee's performance does not improve. As best Quikrete can tell, Arriaga claims that he should not have been held responsible for this ticket. But Arriaga's

own subjective views of his performance are irrelevant. *Metzler*, 464 F.3d at 1179. It is also similar to the way Hodges treated Collins when he received an over weight ticket: Hodges gave him a warning. UMF 50.

Moreover, Arriaga's allegations about Hodges having flat tires or being late are not reflected at all by the record. In fact, the opposite is true; Hodges is unaware of Collins ever being late and he had an exemplary attendance record. UMF 51. Collins's probationary period evaluation specifically states he handled all loads within his hours. *Id.* Arriaga admits that his belief of Collins being late or having flat tires and not being disciplined is not based on any personal knowledge. UMF 46. Moreover, neither Arriaga nor Lopez were disciplined for being late or having flat tires. Thus, this attempted comparison, even if it were accurate, has no bearing on the reasons Arriaga and Lopez were terminated.

If anything, the treatment of Collins shows Hodges treated employees equally and Arriaga's warning shows he was allowed a second chance before his carelessness resulted in him driving into a ditch. This does not show an inference of discrimination or pretext.

> **v.      Arriaga's Alleged Flat Tire During a Delivery Has Nothing to Do with Alleged Discrimination.**

Arriaga's final reason for why he believes Hodges discriminated against him is because Arriaga felt threatened when Hodges alleged told him to drive 20 miles until he

reached Amarillo. Ex. 3, Arriaga Dep. 120:6-122:6.[7] This is not evidence of discrimination, even assuming it is true.

First, Arriaga did get his flat tire fixed. *Id.* Second, he was never disciplined in any way for this flat tire. *Id.* Finally, this has no connection to any discrimination; it does not raise any inference of discrimination or pretext. Arriaga may subjectively believe that Hodges telling him to drive to Amarillo or somewhere else to get the tire fixed was unwise or not correct, but that does not establish pretext. *Rivera v. City & Cty. of Denver*, 365 F.3d 912, 924–25 (10th Cir. 2004) ("The relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs."); *see also* Ex. 1, Hodges Decl. ¶ 58. Notably, Arriaga did not testify that he believed this was unsafe or unusual; instead he claims he only felt "threatened" because he thinks he could have received another ticket for it, which he did not.  Ex. 3, Arriaga Dep. 120:12-17.

None of Arriaga's alleged reasons he believe he was terminated show an inference of discrimination or pretext. Summary judgment is proper on his discrimination claims.

**PROPOSITION II: PLAINTIFFS' STATE LAW CLAIMS ALSO FAIL**

Plaintiffs also allege a discrimination claim under the OADA, a wrongful termination *Burk* tort, and a negligent hiring, training, and supervising claim. (*See* ECF No. 1-1). These all fail.

---

[7] It is not even clear what happened or what Arriaga is referring to. He claims he called Hodges about a flat tire. But he also says he told "him" (apparently Hodges) about it that day and that Arriaga thought a truck was supposed to come fix his tire. Arriaga also claims "they" made him go fix the tire. As best Quikrete can tell, Arriaga claims he was told to drive to a location to get the tire fixed rather than have someone come to him.

The OADA claim is quickly dispensed. The same defenses under Title VII apply to the OADA. *See* 25 O.S. § 1350(F). Thus, the OADA claim fails for all the same reasons above. *See Hamilton v. Oklahoma City Univ.*, 911 F. Supp. 2d 1199, 1206 (W.D. Okla. 2012), *aff'd*, 563 F. App'x 597 (10th Cir. 2014).

Plaintiffs' *Burk* tort claim also fails. As described in detail in Quikrete's motion for judgment on the pleading and its reply [ECF Nos. 30, 50], the OADA abrogated Plaintiffs' *Burk* tort claims because they arise from alleged employment discrimination. Even if there was a *Burk* tort claim, it would similarly fail for the same reasons as Plaintiffs' Title VII and OADA claims because Plaintiffs have no proof of discrimination or that they were wrongfully terminated. *See Medlock v. United Parcel Serv., Inc.*, 608 F.3d 1185, 1197 (10th Cir. 2010).

Similarly, Plaintiffs' negligent hiring, training, and supervising claim is abrogated by the OADA, as argued in Quikrete's motion for judgment on the pleadings. This Court has also recognized that such claims fail where, as here, the underlying discrimination claims fail. *See Westbrook v. Good Neighbor Care Centers LLC*, No. CIV-12-0051-HE, 2013 WL 425077, at *5 (W.D. Okla. Feb. 4, 2013). Even if Plaintiffs could establish discrimination claims, a negligent hiring, training, and supervision claim is predicated on the employer's *prior* knowledge of a propensity for bad acts. *See Bowdish v. Fed. Express Corp.*, 699 F. Supp. 2d 1306, 1327 (W.D. Okla. 2010). There is no evidence of Hodges having a propensity to discriminate against Hispanics here. Quikrete therefore requests that the Court also grant summary judgment on all of Plaintiffs' state law claims.

## PROPOSITION III: THE IMMIGRATION STATUS OF QUIKRETE EMPLOYEES HAS NOTHING TO DO WITH PLAINTIFFS' CASE.

Plaintiffs filed a disparate treatment claim alleging Hodges terminated them because of their race and national origin. After Plaintiffs' depositions, Plaintiffs' counsel, for the first time, claimed that they are alleging Quikrete violated some public policy or law because Quikrete allegedly hired undocumented workers. Plaintiffs' counsel even admits there were no facts of this at the time she filed the petition. (*See* ECF No. 47 at 17). This claim is an afterthought conjured up once it became clear that Plaintiffs have no evidence of any actual discrimination.

It is not even clear what claim or law this theory is based on. It legally cannot be based on Title VII because citizenship status is *not* a protected class under Title VII. *See Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 95 (1973). Plaintiffs have not brought a claim under the Immigration Reform and Control Act. As best Quikrete can tell, Plaintiffs' counsel has connected this theory only to the *Burk* tort claim. But Plaintiffs' fanciful theory has several fatal flaws. Primarily, Plaintiffs are admittedly a U.S. citizen (Lopez) and a lawful permanent resident (Arriaga).   UMF 16, 32. They were not—and could not—have been terminated for their citizenship status (and Plaintiffs do not claim such). Thus, this claim plainly fails two elements of a wrongful *termination Burk* tort claim, even assuming it is not abrogated. *See, e.g.,* OUJI 21.4 (stating that Plaintiffs must be in the protected class they base the claim on, that they were *terminated* for that protected status, and noting that it only applies before the effective date of the OADA (November 1, 2011)).

Plaintiffs' counsel has also recently represented to the Court that that Quikrete did not check Plaintiffs' immigration status, hired Plaintiffs unaware of whether they were legal workers, and that Quikrete may have assumed they were legal. [ECF No. 2-3]. This ignores her clients' own testimony and documents. Arriaga answered "yes" when asked if Quikrete asked to see his documentation to prove he was a legal worker. UMF 32. Lopez similarly testified that he provide work documents to Quikrete when he was hired. UMF 16. Lopez also told Hodges he was a U.S. citizen. Ex. 2, Lopez Dep. 118:5-7. Moreover, Lopez admits that he did *not* apply at Quikrete because he thought they hired illegal workers. *Id.* 159:11-16.   Quikrete also produced Plaintiffs' I-9 forms and copies of the documents they provided to Quikrete. Indeed, Quikrete properly reviewed identification documents provided by Plaintiffs. Ex. 1, Hodges Decl. ¶ 14. Plaintiffs' counsel's representations to the Court that Quikrete did not check Plaintiffs' immigration status, hired them unaware of whether they were legal immigrates, and that Quikrete may have assumed they were legal are a complete fabrication. They ignore the clear evidence. Plaintiffs' alienage theory is frivolous and is a waste of the Court's and Quikrete's time.

## <u>CONCLUSION</u>

For the reasons stated above, Quikrete seeks summary judgment on all of Plaintiffs' claims.  No genuine issue of material fact exists to preclude judgment as a matter of law and Plaintiffs cannot prove the elements of their claims against Quikrete. Plaintiffs have no evidence of discrimination and their other arguments are frivolous.

Respectfully submitted,

*s/ Philip R. Bruce*

Tony G. Puckett, OBA No.13336
Philip R. Bruce, OBA No. 30504
McAfee & Taft A Professional Corporation
Tenth Floor, Two Leadership Square
211 N. Robinson
Oklahoma City, Oklahoma 73102
Telephone:   (405) 235-9621
Facsimile:    (405) 235-0439
tony.puckett@mcafeetaft.com
philip.bruce@mcafeetaft.com

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of October, 2016, I electronically transmitted the attached document to the Clerk of the Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Rachel L. Bussett
Ashley C. Weyland
Bussett Legal Group, PLLC
414 NW 4th St., Suite 200
Oklahoma City, OK  73102

**ATTORNEYS FOR PLAINTIFF**

*s/ Philip R. Bruce*
Philip R. Bruce